# Supreme Court of Florida

————————

No. SC11-1076

————————

**TERRY SMITH,**
Appellant,

vs.

**STATE OF FLORIDA,**
Appellee.

[January 16, 2014]

PER CURIAM.

This case is before the Court on appeal from Terry Smith's first-degree murder convictions and sentences of death for the killings of Berthum Gibson and Keenethia Keenan, and his first-degree murder conviction and life sentence for the killing of Desmond Robinson. We have jurisdiction. See art. V, § 3(b)(1), Fla. Const. For the reasons that follow, we affirm the convictions and sentences.

## I. BACKGROUND

While looking for narcotics on June 5, 2007, Terry Smith, then age nineteen, called an acquaintance, Breon Williams. Williams, a street level drug dealer, informed Smith that he was going to purchase some drugs and invited Smith to

join him.  Smith took Williams up on his offer.  In the late evening of June 5, Williams picked Smith up from the home of Smith's mother.  From there they rode on Williams' motorized scooter to a house in Jacksonville, Florida, where Desmond Robinson and Berthum Gibson sold drugs.

Williams had previously purchased drugs from Desmond Robinson at that location.  On previous occasions, Williams had entered through the back door of the home, which was locked and contained a sheet of Plexiglas on its interior.  When Williams and Smith arrived at the house, they pulled into the driveway, parked Williams' scooter, and walked up to the back door.  Williams knocked on the door, and Robinson let them in.

After Williams and Smith entered the kitchen, Robinson locked the door and left the key in it.  When they entered, Gibson and Keenethia Keenan were sitting at a table in the kitchen and dining room area of the home.  Williams walked to the kitchen counter, which was located near the door, and began to count his money to determine how much cocaine he could purchase.  While Williams was counting his money, he heard Smith say "[g]ive it up," followed by gunshots.  Williams turned to run out of the residence, which required turning the key that was already in the door to unlock it.  Before exiting, Williams saw Smith shoot Robinson multiple times.  Williams was in such a hurry to leave the house that he left approximately $400 on the kitchen counter and his scooter in the driveway.

The State then presented circumstantial evidence that instead of escaping out the back door after killing Robinson, Smith stepped over Robinson's body and proceeded into the hallway, where he shot in the direction of Gibson and Keenan. Gibson and Keenan each died from a single gunshot wound that was attributed to Smith's ten millimeter handgun. Keenan's body was found unarmed in the back of the southeast bedroom, where she died within seconds of the gunshot piercing her heart. When police arrived, they found Gibson, who was still alive despite a gunshot wound to his abdomen. He was leaning against the bed in the same bedroom with a rifle in his hands. Paramedics transported Gibson to the hospital, where he died due to internal injuries from the gunshot wound. Police found shell casings from the gun used by Smith in the kitchen and dining room area as well as in the living room area of the home. They also found shell casings from the rifle used by Gibson in the southeast bedroom and the hallway leading up to the bedroom.

After shooting Gibson and Keenan, Smith ran out the back door of the house, touching the Plexiglas portion of the door on his way out. When police arrived, they found Williams' money on the kitchen counter and drugs on the dining room table. After exiting the crime scene, Smith called Ullysses Johnson to pick him up from the area. At the time, Johnson was at home playing video games with his brother Raylan Johnson and Jonathan Peterson. The three then picked

Smith up near the crime scene. In the car, Smith told them that he had shot three people.

After arriving at the Johnsons' home, Ullysses Johnson and Peterson went inside, while Smith and Raylan Johnson remained outside. Smith gave his gun to Raylan Johnson, who buried it in the yard and then sold it a few days later to Walter Dumas. They also burned Smith's clothes in a bin that was in the yard.

The jury found Smith guilty of first-degree murder for the deaths of Robinson, Gibson, and Keenan. The jury found Smith guilty of first-degree murder under both the felony murder and premeditated theories in the deaths of Gibson and Keenan, and guilty under only the felony murder theory in the death of Robinson. The jury also found Smith guilty of attempted armed robbery.

The jury recommended a life sentence in the first-degree murder of Robinson. The jury recommended sentences of death by a vote of eight to four for the first-degree murder of Gibson and by a vote of ten to two for the first-degree murder of Keenan.

The trial court held a hearing pursuant to Spencer v. State, 615 So. 2d 688 (Fla. 1993), prior to sentencing Smith to death for the first-degree murders of Gibson and Keenan and to life imprisonment for the first-degree murder of Robinson. The court gave great weight to the aggravating circumstances that Smith was previously convicted of another capital felony, § 921.141(5)(b), Fla.

Stat. (2011), and that the capital felony was committed while Smith was engaged in an attempt to commit robbery, § 921.141(5)(d), Fla. Stat. (2011), merged with the aggravator that Smith committed the capital felony for pecuniary gain, § 921.141(5)(f), Fla. Stat. (2011). The court found the statutory mitigating circumstance of Smith's age at the time of the crime, nineteen, established and gave it moderate weight. Regarding the nonstatutory mitigating factors sought by Smith, the court concluded that the following factors were established: (1) Smith's mental status was mitigating (moderate weight); (2) Smith loves his children and their mothers and they love him (some weight); (3) Smith was a good brother to his siblings (little weight); (4) Smith took care of his sister's seven children while she was at work (moderate weight); (5) Smith is dependable (some weight); (6) Smith was a good employee and therefore he would do well in prison (slight weight); (7) Smith was well behaved during court proceedings (no weight because it is not mitigating); (8) Smith could be rehabilitated in prison and make positive contributions to society (little weight); (9) Breon Williams was never charged with a crime arising out of the murders on June 5, 2007 (no weight because it is not mitigating); (10) Smith grew up in a "terrible" neighborhood (some weight).

## II.  ANALYSIS

On appeal of his convictions and sentences Smith raises four issues: (A) the evidence is insufficient to support his convictions for premeditated murder for the

killings of Gibson and Keenan; (B) the trial court erred in giving additional weight to the felony murder aggravating circumstance on the basis that the murders were premeditated; (C) Smith's sentence is disproportionate; and (D) the trial court erred in sentencing Smith to death because Florida's capital sentencing proceedings are unconstitutional under Ring v. Arizona, 536 U.S. 584 (2002).

## A. Sufficiency of the Evidence

In his first claim on appeal, Smith claims that the trial court erred in denying his motions for judgments of acquittal because the evidence is insufficient to support his convictions for first-degree premeditated murder in the deaths of Gibson and Keenan. Specifically, Smith asserts that the evidence does not refute his claim that he acted in self-defense. As we explain below, Smith did not preserve this claim for review. In any event, under this Court's independent review of the evidence, Smith's argument lacks merit. Sufficient evidence supports Smith's three first-degree murder convictions.

"Florida Rule of Criminal Procedure 3.380(b) states that a motion for judgment of acquittal 'must fully set forth the grounds on which it is based.' " Victorino v. State, 23 So. 3d 87, 103 (Fla. 2009). This Court has further held that when a defendant does not raise in the trial court the same grounds for granting the motion argued on appeal, the claim is not preserved for appeal. See id.; Archer v. State, 613 So. 2d 446, 448 (Fla. 1993). After the State rested its case, Smith

moved for a judgment of acquittal "as to each count in the Indictment, in that the State has not established a prima facie case of evidence. No further argument." The trial court denied Smith's motion. After the close of evidence, Smith's counsel renewed the "motion for judgment of acquittal and all of [his] previously made motions." The trial court denied the renewed motion for judgment of acquittal. Smith did not argue to the trial court, as he argues on appeal, that he killed Gibson and Keenan in self-defense. Therefore, Smith failed to preserve his self-defense claim for appeal.

Even though Smith failed to preserve his claim that the trial court erred in denying his motions for judgment of acquittal, "this Court independently reviews the record to confirm that the jury's verdict is supported by competent, substantial evidence." Davis v. State, 2 So. 3d 952, 966-67 (Fla. 2008) (citing Fla. R. App. P. 9.142(a)(6)). The jury found Smith guilty of the first-degree murder of victims Gibson and Keenan under two theories: felony murder and premeditated murder. Additionally, the jury found Smith guilty of the first-degree murder of victim Robinson under the felony murder theory. The evidence is sufficient to support all three convictions.

Two standards of review apply to the determination of whether the evidence of guilt is sufficient. Where the evidence of guilt is direct, either in whole or in part, this Court reviews whether "a rational trier of fact, upon reviewing the

evidence in the light most favorable to the State, could find that the elements of the crime have been established beyond a reasonable doubt." Twilegar v. State, 42 So. 3d 177, 188 (Fla. 2010). However, where the evidence of guilt is wholly circumstantial, "not only must the evidence be sufficient to establish each element of the offense, but the evidence also must be inconsistent with any reasonable hypothesis of innocence proposed by the defendant." Id. "The issue of inconsistency is a jury question and the verdict will be sustained if supported by competent, substantial evidence." Id.

In order for the State to obtain convictions for first-degree murder under the felony murder theory in this case, it must prove beyond a reasonable doubt that the unlawful killings of Gibson, Keenan, and Robinson were committed while Smith was engaged "in the attempt to perpetrate" robbery. § 782.04(1)(a)2.d., Fla. Stat. (2012). "In order to prove attempted armed robbery, the State must show: (1) the formation of an intent to commit the crime of robbery; (2) the commission of some physical act in furtherance of the robbery; and (3) the use of a firearm." Franqui v. State, 699 So. 2d 1312, 1317 (Fla. 1997). Section 812.13(1), Florida Statutes, defines robbery as "the taking of money or other property which may be the subject of larceny from the person or custody of another, with intent to either permanently or temporarily deprive the person or the owner of the money or other

property, when in the course of the taking there is the use of force, violence, assault, or putting in fear."

The direct evidence standard of review applies to the convictions for the murders of Robinson, Gibson, and Keenan under the felony murder theory. See Twilegar, 42 So. 3d at 189-90. Here, the State presented the testimony of Breon Williams, an eyewitness to those crimes. Williams testified that: (1) he went with Smith to buy narcotics; (2) when they arrived at the house, Robinson opened the door, and Gibson and Keenan were sitting at the dining room table; (3) Smith went to the dining room with Robinson; (4) he heard Smith say "[g]ive it up;" (5) seconds later he heard gunshots; and (6) as he ran out of the house, he saw Smith shoot Robinson. Further, forensic evidence—Smith's palm print on the Plexiglas interior of the back door—established that Smith had been at the crime scene, which contradicts his initial assertion that he had never been inside the house.

A rational trier of fact, when viewing the above evidence in the light most favorable to the State, could conclude that the State proved each element of first-degree felony murder beyond a reasonable doubt in the deaths of Gibson, Keenan, and Robinson. First, a rational trier of fact could conclude that Smith attempted to commit armed robbery when he told Robinson to "[g]ive it up" while holding a firearm. Next, a rational trier of fact could also conclude that Gibson, Keenan, and Robinson were unlawfully killed while Smith was attempting to perpetrate the

armed robbery based on: (1) Williams' testimony that he saw Smith shoot Robinson; (2) Williams' testimony that he saw Gibson and Keenan in the same room a few seconds before the attempted armed robbery; (3) the testimony of law enforcement officers that they found Gibson and Keenan with gunshot wounds at the crime scene shortly afterwards; and (4) the evidence that the gunshot wounds sustained by all three victims were inflicted by the same gun.

In reviewing the sufficiency of the evidence of premeditation in the murders of Gibson and Keenan, the circumstantial evidence standard applies. See id. at 188. The evidence to prove premeditation in the murders of Gibson and Keenan is wholly circumstantial because there were no witnesses to these two murders and Smith's admission—made in the car as he fled the crime scene—that he shot three people did not establish premeditation. At trial, Smith argued that he was innocent of all crimes charged and the witnesses against him were not credible. On appeal, Smith for the first time claims that the murders of Gibson and Keenan were "reflexive" in response to being shot at by Gibson and Keenan and that the State did not present any evidence to contradict this theory of self-defense. The relevant inquiry regarding whether the circumstantial evidence of guilt is inconsistent with the defense's theory of innocence is based on the evidence presented and the theory argued to the jury at trial. See id.; State v. Law, 559 So. 2d 187, 188 (Fla. 1989). Further, even if this Court were to consider Smith's new self-defense

- 10 -

argument on appeal, the evidence conclusively refutes Smith's claim that Keenan was shooting at him.

This Court has defined premeditation as requiring

more than a mere intent to kill; it is a fully formed conscious purpose to kill. This purpose to kill may be formed a moment before the act but must exist for a sufficient length of time to permit reflection as to the nature of the act to be committed and the probable result of that act.

Pagan v. State, 830 So. 2d 792, 803 (Fla. 2002) (quoting Wilson v. State, 493 So. 2d 1019, 1021 (Fla. 1986)). This Court has further explained that "[e]vidence from which premeditation may be inferred includes such matters as the nature of the weapon used, the presence or absence of adequate provocation, previous difficulties between the parties, the manner in which the homicide was committed, and the nature and manner of the wounds inflicted." Twilegar, 42 So. 3d at 190 (quoting Larry v. State, 104 So. 2d 352, 354 (Fla. 1958)).

The evidence of Smith's guilt under the premeditation theory includes the following: (1) Smith brought a gun with him to the crime scene; (2) Gibson and Keenan retreated to the bedroom area of the house during the brief period of time between Smith's entering the home and his murdering Robinson; (3) Smith could have left the house through the same door that opens into the kitchen that he used to enter the house and that Williams used to run out of the house; (4) Smith had to move from the kitchen and dining room area into the living room area to shoot

Gibson and Keenan; (5) shell casings from Smith's gun were found in the living room; (6) the shell casings from Smith's gun that correlated to the wounds sustained by Robinson were found in the kitchen and dining room area; (7) Keenan could not have been shooting at Smith because she was unarmed when police discovered her body and she died within seconds as a result of a gunshot wound piercing her heart; and (8) all of the shell casings from the rifle fired by Gibson were found in the bedroom and hallway area. This evidence establishes that rather than leaving the home after shooting Robinson, Smith made a deliberate choice to locate and shoot Gibson and Keenan, who had retreated to the bedroom area. Therefore, the evidence cannot be reconciled with Smith's hypothesis of innocence. Accordingly, the evidence of Smith's guilt is sufficient to support his convictions under both the felony murder and premeditation theories.

### B. Weight Assigned to Murder During the Course of a Felony Aggravating Factor

Smith claims that the trial court erred in giving great weight to the murder committed during the course of an attempted armed robbery aggravating factor in the deaths of Gibson and Keenan. The trial court did not err. This Court has stated that "the weight to be accorded to an aggravator is within the discretion of the trial court and will be affirmed if based on competent substantial evidence." Sexton v. State, 775 So. 2d 923, 934 (Fla. 2000). "A court abuses its discretion only when the judicial action is arbitrary, fanciful, or unreasonable, which is another way of

saying that discretion is abused only where no reasonable [person] would take the view adopted by the trial court." Frances v. State, 970 So. 2d 806, 817 (Fla. 2007) (quoting Trease v. State, 768 So. 2d 1050, 1053 n.2 (Fla. 2000)) (alteration in original; internal quotation marks omitted). A trial court does not abuse its discretion when it considers the specific facts and circumstances of a defendant's felony in determining the weight that it should assign to aggravating factors based on that felony. See Carter v. State, 980 So. 2d 473, 483 (Fla. 2008) (concluding that trial court did not abuse its discretion by considering facts of burglary in assigning great weight to felony committed in the course of burglary aggravator); Owen v. State, 862 So. 2d 687, 702-03 (Fla. 2003) (concluding that trial court did not abuse its discretion in assigning great weight to aggravating factor that murder was committed in the course of burglary where defendant broke into home to murder babysitter).

Based on the foregoing, the trial court did not err in considering the circumstances of Smith's crimes when determining the appropriateness of Smith's two death sentences. Smith was convicted of three contemporaneous murders that occurred after he attempted to rob the occupants of the house he went to with Williams.

Smith, however, asserts that by taking into account the fact that the murders of Gibson and Keenan were premeditated, the trial court impermissibly relied on a

- 13 -

nonstatutory aggravator. Smith argues that this Court disapproved of the consideration of premeditation as an aggravating factor in <u>Brown v. State</u>, 381 So. 2d 690, 696 (Fla. 1980). <u>Brown</u> is distinguishable because the trial court in <u>Brown</u> considered premeditation as a separate aggravating circumstance for the murder. Here, the trial court concluded that the weight that it should apply to the committed during the course of an enumerated felony aggravating factor was increased by the premeditated nature of two of the murders that occurred during the attempted armed robbery.

Smith further asserts that the trial court's erroneous consideration of premeditation regarding the murders of Gibson and Keenan was exacerbated by the State's failure to present sufficient evidence of premeditation. For the reasons discussed above regarding the sufficiency of the evidence, the evidence of Smith's premeditation in the murders of Gibson and Keenan was sufficient. Accordingly, the trial court did not abuse its discretion nor did it apply a nonstatutory aggravating factor by giving great weight to the felony murder aggravating circumstance.

### C. Proportionality

To ensure uniformity of sentencing in death penalty proceedings, this Court considers the totality of circumstances and compares each case with other capital cases. The Court does not simply compare the number of aggravating and

mitigating circumstances. Taylor v. State, 937 So.2d 590, 600 (Fla. 2006). "Further, in a proportionality analysis, this Court will accept the weight assigned by the trial court to the aggravating and mitigating factors." Hayward v. State, 24 So. 3d 17, 46 (Fla. 2009). "In performing a proportionality review, a reviewing court must never lose sight of the fact that the death penalty has long been reserved for only the most aggravated and least mitigated of first-degree murders." Urbin v. State, 714 So. 2d 411, 416 (Fla. 1998).

Smith's death sentences are proportional under Florida law. The trial court found two aggravating circumstances for each of Smith's death sentences: (1) prior capital felony based on the other two contemporaneous murders; and (2) murder in the course of attempted armed robbery merged with pecuniary gain. The trial court found Smith's age at the time of the crime, nineteen, as the only statutory mitigation and gave it moderate weight. Additionally, the trial court found the following nonstatutory mitigating factors were established: (1) Smith's mental status (moderate weight); (2) Smith loves his children and their mothers and they love him (some weight); (3) Smith was a good brother to his siblings (little weight); (4) Smith took care of his sister's seven children while she was at work (moderate weight); (5) Smith is dependable (some weight); (6) Smith was a good employee and therefore he would do well in prison (slight weight); (7) Smith was well behaved during court proceedings (no weight because it is not mitigating); (8)

Smith could be rehabilitated in prison and make positive contributions to society (little weight); (9) Breon Williams was never charged with a crime arising out of the murders on June 5, 2007 (no weight because it is not mitigating); (10) Smith grew up in a "terrible" neighborhood (some weight). Smith has not demonstrated that the trial court erred in weighing these factors.

Smith's death sentences are comparable to the death sentences upheld as proportional in Hayward, 24 So. 3d at 46-47 (concluding death sentence proportional where aggravators were prior violent felony resulting from previous second-degree murder, given great weight, and murder committed in the course of a robbery merged with pecuniary gain, given great weight, no statutory mitigation, and eight nonstatutory mitigators, given very little to some weight), and Bevel v. State, 983 So. 2d 505, 523-25 (Fla. 2008) (concluding death sentence proportional where single aggravating factor of prior violent felony for contemporaneous murder and attempted murder convictions, given very great weight, no statutory mitigation, and six nonstatutory mitigators, given between very little and minimal weight). Given this record, we conclude that Smith's death sentences are proportional.

### D. Ring Claim

Smith is not entitled to relief on his claim that his death sentences are unconstitutional under Ring. This Court has repeatedly held that Ring is satisfied

- 16 -

when the defendant has previously been convicted of a violent felony based on a contemporaneous murder. See, e.g., Chandler v. State, 75 So. 3d 267, 269 (Fla. 2011); Frances, 970 So. 2d at 822-23. Further, this Court has repeatedly held that Ring is satisfied when the defendant commits the murder in the course of an enumerated felony. See, e.g., Gudinas v. State, 879 So. 2d 616, 617 (Fla. 2004); Owen v. Crosby, 854 So. 2d 182, 193 (Fla. 2003). Smith was convicted of three contemporaneous first-degree murders and attempted armed robbery by a unanimous jury. Accordingly, Smith's death sentences are not unconstitutional under Ring.

## III. CONCLUSION

For the reasons stated above, we conclude that Smith is not entitled to relief from his convictions and sentences for the first-degree murders of Berthum Gibson, Keenethia Keenan, and Desmond Robinson. Accordingly, we affirm Smith's convictions and sentences.

It is so ordered.

POLSTON, C.J., and PARIENTE, LEWIS, QUINCE, CANADY, LABARGA, and PERRY, JJ., concur.

NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING MOTION, AND IF FILED, DETERMINED.

An Appeal from the Circuit Court in and for Duval County,
    Adrian Gentry Soud - Case No. 16-2009-CF-004417

- 17 -

Nancy A. Daniels, Public Defender, and Nada M. Carey, Assistant Public Defender, Tallahassee, Florida,

for Appellant

Pamela Jo Bondi, Attorney General, and Carolyn Snurkowski, Associate Deputy General, Tallahassee, Florida,

for Appellee